Michael A. Burke, Esq., NV Bar No. 11527
**ROBISON, SIMONS, SHARP & BRUST**
71 Washington Street
Reno, NV 89503
Telephone: (775) 329-3151
Facsimile: (775) 329-7941

Todd A. Boley, Esq., CA Bar No. 68119
**LAW OFFICES OF TODD BOLEY**
2831 Mariner Square Dr., Ste 280
Alameda, CA 94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170
(To be admitted *Pro Hac Vice*)

Peter W. Alfert, Esq., CA Bar No. 83139
Ian Hansen, Esq., CA Bar No. 255449
**LAW OFFICE OF PETER ALFERT, PC**
200 Pringle Ave., Suite 450
Walnut Creek, California 94596
Telephone: (925) 279-3009
Facsimile: (925) 279-3342
(To be admitted *Pro Hac Vice*)

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAMMARA TIMS and H.H., a minor by and through his Guardian Ad Litem, GENEVA ATTEBERRY,<br><br>  Plaintiffs,<br><br>  v.<br><br>CLARK COUNTY SCHOOL DISTRICT, KASEY GLASS, MARK CONNORS, and DOES 1-50,<br><br>  Defendants. | Case No. 2<br><br>**COMPLAINT FOR DAMAGES**<br><br>[JURY DEMAND] |

- 1 -

COMPLAINT

# INTRODUCTION

Plaintiffs TAMMARA TIMS and HH, a minor by and through his Guardian Ad Litem, GENEVA ATTEBERRY allege as follows:

## PARTIES

1. Plaintiff HH is a minor and a resident of Clark County, Nevada.

2. GENEVA ATTEBERY is the natural grandmother of HH and brings this action on behalf of her grandson HH as his guardian ad litem.

3. Plaintiff TAMMARA TIMS is the mother of Plaintiff HH and a resident of Clark County, Nevada. She brings this action on her own behalf.

4. Defendant CLARK COUNTY SCHOOL DISTRICT ("CCSD") is a public entity duly incorporated and operating under Nevada law as a school district.

5. Defendant KASEY GLASS ("GLASS") was at all times relevant herein, employed by Defendant CCSD as a special education teacher at Kirk Adams Elementary School ("KAES") in Las Vegas, Nevada. All actions by Defendant GLASS alleged herein were taken under color of state law and in the course and scope of her employment with Defendant CCSD.

6. Defendant MARK CONNORS ("CONNORS") was at all times relevant herein, employed by Defendant CCSD as Principal of KAES. All actions by Defendant CONNORS alleged herein were taken under color of state law and in the course and scope of his employment with Defendant CCSD.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

7. This court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Clark County, Nevada.

9. This case arose in Clark County, Nevada, and, pursuant to Rule 1-6 of the Local Rules of the Nevada District should be assigned to the Southern Division of the Nevada District.

COMPLAINT

## FACTUAL ALLEGATIONS

10. At all times relevant to the allegations herein, HH was a special education student at KAES and entrusted to the care of Defendants.

11. HH was assigned to the special education classroom of GLASS beginning on or about August, 2016.

12. HH has been diagnosed with Autism Spectrum Disorder and has difficulty communicating verbally.

13. On information and belief, during his time in her class, GLASS routinely subjected HH to physical and verbal abuses.

14. Plaintiff HH was subjected to a variety of unconscionable abuses, including but not limited to, repeatedly having his head pushed down by GLASS's foot, being kicked in the face, having a lunchroom table pushed up against his seated body restraining him in the chair, depriving him of food and liquids at mealtime by removing and throwing away his food and liquids before he can consume them, intentionally verbally and physically taunting and humiliating him and by refusing to provide food and liquid.  In addition to these behaviors, a teacher at KAES separately reported to the Clark County School District Police Department (CCSDPD) that she had previously observed GLASS act aggressively with her special needs students on other occasions by pulling their arms and yelling at them.

15. On information and belief, HH directly experienced abuse on repeated occasions and also observed other students being physically and verbally abused.

16. The use of aversive intervention is expressly prohibited by state law, which provides that "[a] person employed by the board of trustees of a school district or any other person shall not use any aversive intervention on a pupil with a disability." NRS§ 388.497.  The term "aversive intervention" is defined broadly and includes the use of corporal punishment as well as verbal and mental abuse where those actions are used to punish or to eliminate, reduce or discourage maladaptive behavior of a student with a disability. NRS§ 388.473.  Aversive interventions, physical or mechanical restraints on students with disabilities are also proscribed

under District regulations. CCSD Regulation 5141.3.

17. State law mandates that school districts must provide training to staff regarding the use of physical and mechanical restraint to ensure the safety of pupils in their care. NRS§ 388.505. Any person who intentionally uses aversive intervention on a pupil with a disability is subject to disciplinary action. NRS§ 388.506.

18. Any incident involving an "aversive intervention" must be reported to the board of trustees of the school district not later than 24 hours after the incident occurred, or as soon thereafter as it is discovered. NRS§ 388.508. The board of trustees and school superintendent must then develop a corrective action plan "to ensure that within 30 calendar days appropriate action is taken by the school and the board of trustees to prevent future violations." Further, any "aversive action" taken against a student with a disability must be entered into the student's cumulative record. NRS§ 388.513.

19. Pursuant to CCSD Regulation 5141.3.and Nev. Rev. Stat. Ann.§ 388.501, if a physical restraint or aversive intervention has been used on a student, it must be reported in the pupil's file no later than one working day after the fact. A report (form CCF-624) must also be sent to the student's Individualized Education Program (IEP) Team, the student's parent or guardian, and the Board of School Trustees/designee of the school district.

20. On information and belief, Defendants CONNORS and CCSD repeatedly failed to comply with state law and school policy regarding the prompt documentation of the use and nature of aversive interventions in HH's cumulative record. Further, on information and belief, Defendants CONNORS and the District repeatedly failed to report in a timely manner the use of aversive interventions to the minor plaintiffs' parents in violation of Nev. Rev. Stat. Ann.§ 388.501.

21. On information and belief, CONNORS and other unknown District administrators and employees were aware of the improper and abusive interactions of GLASS with her special needs students at KAES, but they failed to take action to intervene to protect the children in their care and/or to report the abuse to law enforcement or to students' parents.

22. On information and belief, CONNORS and other unknown District administrators and employees were responsible for the hiring, training and supervision of School District staff at KAES and for ensuring compliance with state and federal laws.

23. On information and belief, GLASS's abusive conduct towards HH and other special needs students at KAES was open and obvious and CONNORS and other CCSD employees knew or should have known.

24. On information and belief, Plaintiffs allege that CONNORS and other CCSD employees knew that HH was being abused by GLASS prior to March 15, 2017 and concealed this information from TIMS, and the later discovery of what her son went through caused TIMS severe emotional distress.

25. CONNORS and OTHER DISTRICT EMPLOYEES, were each at all times relevant to the allegations herein, a mandatory reporter as defined by NRS § 432B.220.

26. On information and belief, CONNORS, other District employees and other teachers, instructional aides, and/or administrative officers of CCSD were each aware that children under the supervision of GLASS were victims of abuse as defined by NRS § 432B.070 and/or NRS § 432B.090 and that the abuse was ongoing; however, none of these mandatory reporters employed by the CCSD complied with their duty to report the abuse to an agency specified in NRS § 432B.220(1)(a).

27. At the relevant times hereto, HH's behavior did not rise to the level of an emergency of serious or imminent threat of harm to himself or others that would justify using physical force against him or restraining his freedom of movement.

28. As a proximate result of the actions of GLASS, HH suffered unjustifiable physical pain and mental suffering.

29. Plaintiffs do not seek any services or remedies available under the Individuals with Disabilities Education Act ("IDEA").

30. HH was born in 2007 and was nine years old when he was assigned to GLASS's special education classroom in 2016.

COMPLAINT

31. During the time that HH was in GLASS's classroom, HH began exhibiting aggression towards his sister including hitting and scratching her. During the period he was a student in GLASS's classroom, HH no longer wanted to attend school and often refused to eat. These behaviors were uncharacteristic for HH and were behaviors that he had not exhibited before his time in GLASS's classroom.

32. HH's parents became concerned about their son's disturbing behavior. However, due to his disabilities, HH was unable to verbally communicate the cause of his distress to his parents.

33. The full extent and duration of the abuse suffered by HH is unknown to Plaintiffs at this time because he is functionally non-verbal; however, multiple incidents were video recorded on March 15, 2017, during which defendant GLASS aggressively and intentionally grabbed, pulled and pushed HH, repeatedly pushed his head down with her foot and kicked him in the head, deprived him of food and liquid by removing it at mealtime before he was able to consume it by throwing it away, restrained and pinned HH into his chair by pushing a table up against his seated body, and intentionally triggered his behaviors by taunting and humiliating him when he indicated through sounds and hand gestures that he wanted his food. GLASS also grabbed HH's hands and bent them, causing him to drop onto the floor and she intentionally kicked HH's hands.

34. GLASS' actions on March 15, 2017 took place in the school cafeteria, in front of numerous teachers, students, and CCSD personnel. Said actions were recorded by CCSD's closed circuit cameras.

35. CCSDPD Officer Jonathan Fuentes ("Fuentes") prepared a Crime Report after interviewing witnesses and viewing the videotaped footage of the incidents recorded on March 15, 2017, determining that "*probable cause exists to charge GLASS with battery NRS 200.481(M) for using willful and unlawful force and violence upon an autistic nonverbal special needs child.*" Fuentes further found that GLASS "*subjected HH to actions that a reasonable person would consider degrading, terrorizing and/or emotionally traumatic while creating an environment without proper care necessary for the wellbeing of a child.*" Finally, Fuentes concluded "*probable

COMPLAINT

*cause exists to charge GLASS with child neglect NRS 200.508 for maltreatment.*" The report confirms that "*an affidavit for warrant was issued for GLASS for the above charges*".

36. Plaintiff Tammara TIMS, HH's mother, has been devastated by the abuse of her son and by the failure of the District to timely communicate report of abuse to her.

37. Since leaving GLASS's classroom, HH continues to experience extreme anxiety, stress and fear as a result of the conduct of the Defendants and by their failure to act.

38. On information and belief, HH will require psychological treatment to address the trauma he has experienced.

### Allegations Specific to CCSD Official Policies and Practices

39. On information and belief, CCSD had multiple "written" policies, regulations, rules, and practices which contributed to the occurrence of the incidents which gave rise to the constitutional violations in this case. Multiple persistent and widespread customs and practices of CCSD personnel also contributed to the incidents at issue in this litigation. Some of the entrenched customs and practices of CCSD at issue consist of CCSD employees' persistent failure to follow written policies, regulations, rules, or laws. Some of the entrenched customs and practices of CCSD at issue consist of CCSD employees going through the motions of complying with the letter of written policies, regulations, rules, or laws, while in actuality not complying with the substantive intent of the relevant directives. These customs and practices were so widespread as to be the functional equivalent of CCSD policy.

### CCSD Regulations Prohibit Anonymous Reporting

40. CCSD Regulation R-5152 prohibits employees of CCSD from making reports to authorities regarding suspected child abuse without also informing school administrators. On information and belief, policies such as these have a chilling effect on the reporting of abusive conduct committed by employees because by making a report, an employee places himself or herself at risk of retaliation and peer backlash. The Nevada State Legislature itself recognized the importance of the availability of the option of reporting anonymously, in its passage of the Safe and Respectful Learning Environment legislation, when it stated: "The ability to anonymously

- 7 -

COMPLAINT

report information about dangerous, violent or unlawful activities, or the threat of such activities […] is critical in preventing, responding to and recovering from such activities." (NRS 388.1454)

### CCSD's Practices Discourage Reporting of Abuse by Employees

41. On information and belief, CCSD supervisory personnel have a permanent and well-settled custom and practice of discouraging employees from reporting abuse of students by fellow employees. On information and belief, this custom and practice is enforced by displaying antagonism toward employees when they do report; by failing to act on the reports, thereby creating a sense of hopelessness, helplessness and demoralization in the reporting employees; and by tolerating the peer approbation displayed against employees who do report.

### CCSD Policies Threaten Legal Consequences for Employees Who Disclose Abuse to Parents or Media

42. CCSD Policy 1213, CCSD Regulation 1213.1 require that any disciplinary action regarding an employee, and any concerns or complaints made about an employee be kept confidential, and warn employees of the possibility that they could expose themselves to litigation by speaking about concerns. No parallel warning regarding the potential legal consequences of silence, or concealment are included.  On information and belief, these policies, and the manner in which they are implemented discourage employees from reporting abusive conduct of fellow employees against students, and explicitly make it the policy of CCSD to conceal from parents of students when their children's teachers have engaged in abusive conduct toward students, even when that conduct has been confirmed. In its communications with the public and with individual parents, it is the policy of CCSD to venerate the privacy of abusive and allegedly abusive employees above all other concerns, including its obligations for the safety of its students, and its obligations as a public agency to provide information regarding its function to members of the public and elected officials so that proper oversight can be exercised.

### CCSD Policies Prevent Accurate Record Keeping and Appropriate District-Wide Responses

43. CCSD Policy 1213 and Regulation 1213.1, require that complaints be submitted, investigated, and resolved at the lowest levels in the "chain of command," and state that any

COMPLAINT

concerns received by board members or the District's superintendent will not be considered, but instead will be passed on to appropriate person lower in the command structure for handling. These policies, and the manner in which they are implemented, create a decentralized system of obtaining, investigating, and resolving complaints. As a result, the individuals at the "top" of the system prevent themselves from hearing complaints, or knowing whether they were properly dealt with, thereby allowing themselves to have "plausible deniability" as to the breadth of problems within the system. Furthermore, by insisting that complaints of abuse by teachers be handled by the principal of the school, CCSD creates a clear conflict of interest, in which the person investigating and responding to complaints has strong motivation to minimize or conceal misconduct by teachers under his or her supervision, in order to make their own job easier, by not losing staff to suspension or termination, and out of concern that the situation might reflect badly upon themselves, resulting in poor performance evaluations, and resulting negative financial consequences.

**CCSD's Practices Result in the Concealment of Student Incidents and Behavioral Interventions**

44. On information and belief, CCSD has a permanent and well-settled custom and practice of not documenting student injuries, behavioral incidents and behavioral interventions and not communicating such to the parents of students, thereby preventing the parents of students, especially non-verbal students from having adequate information regarding their children's experiences during the school day.

**CCSD's Practices Treat Allegations of Misconduct as Interpersonal Conflicts Between Employees**

45. On information and belief, CCSD has a permanent and well-settled custom and practice of treating an employees' complaints concerning inappropriate conduct on the part of a teacher as an interpersonal issue to be addressed, rather than recognizing it as an indication that a student's safety and rights might be in jeopardy.

**CCSD's Practices Fail to Ensure Proper Training**

46. On information and belief, CCSD has a permanent and well-settled custom and

COMPLAINT

practice of failing to ensure that Special Education teachers, and teachers' assistants in Special Education classrooms had proper training to handle behavior issues in Special Education classrooms. On information and belief, current and former employees of CCSD received little or no training regarding the handling of behavioral issues.

47. On information and belief, CCSD has a permanent and well-settled custom and practice of declining to make policy or procedural changes in response to confirmed cases of criminal abuse by its teachers. On information and belief, there is a long history of CCSD teachers and other employees having been confirmed to have abused students, yet, on information and belief, CCSD has repeatedly failed to take steps to improve early detection of potentially abusive teachers, early reporting of abusive conduct, or to ensure that teachers who engaged in abusive conduct were removed from CCSD. CCSD's failures to act include, but are not limited to the following:

1) CCSD gave no training to staff that specifically addressed how to handle concerns about potentially serious misconduct on the part of other staff members;

2) CCSD provided no system to allow staff or the public to make anonymous reports, such as "hotlines" of the sort that are common in large businesses;

**FIRST CLAIM FOR RELIEF**
**Violation of Constitutional Rights, 42 U.S.C. § 1983**
**Plaintiff HH vs. GLASS, CONNORS, and CCSD**

48. Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

49. HH has a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable assaults of his person.

50. GLASS violated HH's rights under the Fourth Amendment and Fourteenth Amendment by using unjustified and unreasonable force against him or by failing to prevent it.

51. GLASS's conduct was objectively unreasonable under the circumstances and in light of the educational objectives HH was trying to achieve.

COMPLAINT

52. GLASS's conduct in physically seizing HH unlawfully subjected him to excessive, unreasonable, and unnecessary physical force.

53. On information and belief, CONNORS violated the rights of HH under the Fourth and Fourteenth Amendments to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to HH from GLASS. On information and belief, Plaintiffs allege that Defendant CONNORS personally participated in the deprivation of H.H.'s constitutional rights by his failure to act in response to allegations of serious child abuse, and his deliberate indifference to the fact that abuse was occurring.

54. On information and belief, CONNORS personally participated in the deprivation of constitutional rights of HH by his failure to act in response to allegations of child abuse by GLASS.

55. The actions of GLASS, CONNORS and other District employees, as described above, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

56. CCSD violated the rights of HH under the Fourth Amendments by its failure to maintain adequate policies or conduct adequate training to prevent violations of the rights of students and parents. On information and belief, CCSD had multiple "written" policies, regulations, rules, and practices contributed to the occurrence of the incidents which gave rise to the constitutional violations in this case. Multiple persistent and widespread customs and practices of CCSD also contributed to the incidents at issue in this litigation. The permanent and well - settled practices of CCSD gave rise to the alleged constitutional violations. Violations such as the ones inflicted on Plaintiffs were an obvious risk of the procedures adopted by CCSD and its policymakers. CCSD's acts and omissions constitute deliberate indifference.

57. CCSD also violated the rights of HH under the Fourth Amendments when it displayed deliberate indifference to the demonstrated propensity of GLASS to violate the constitutional rights of citizens in the manner that Plaintiff's rights were violated.

58. CCSD ratified the conduct of GLASS by, including but not limited to, its decision to retain GLASS as a teacher despite her mistreatment of special needs students.

COMPLAINT

59. As a proximate result of the violations alleged hereinabove, Plaintiffs have suffered damages as herein alleged.

## SECOND CLAIM FOR RELIEF
**Discrimination in Violation of the Americans With Disabilities Act, 42 USC §§ 12101, et. seq.**
**Plaintiff HH v. CCSD**

60. Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

61. Effective January 26, 1992 Title II of the Americans with Disabilities Act of 1990, entitled each of LMV, MH and SS to the protections of the "Public Services" provision. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201 of the ADA.

62. Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. HH was at all times relevant herein a qualified individual with a disability as therein defined.

63. By subjecting the minor plaintiff HH to ongoing physical and verbal abuse, HH was unable to enjoy the benefits of education. In addition, non-disabled children were not subjected to similar acts of abuse.

64. CCSD has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that educational services are provided on an equal basis to children with disabilities and free of hostility toward their disability.

65. CCSD has further failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by subjecting HH to a hostile educational environment.

66. GLASS was deliberately indifferent to the risk that her actions would deprive the minor plaintiff HH of equal and meaningful access to education.

COMPLAINT

67. On information and belief, CONNORS and other District employees were deliberately indifferent to complaints of abuse committed by GLASS because the victims of her abuse, including HH were persons with a disability.  Furthermore, CONNORS was informed by others that HH was abused by GLASS.  On information and belief, despite this knowledge, CONNORS and other District employees did nothing to stop the ongoing abuse, and in fact actively misled plaintiff Tammara TIMS, the parent of HH, as to the competency of GLASS and as to the experiences of HH in GLASS's classroom. Furthermore, even after police initiated an investigation of GLASS and recommended multiple criminal charges be filed, CCSD caused and allowed GLASS to continue in her role as a teacher of special needs students in the CCSD.

68. The deliberate indifference by employees of CCSD gives rise to respondeat superior liability of CCSD.

69. As direct and proximate result of CCSD's failure to comply with their duty under Title II, HH has suffered damages, including special and general damages, according to proof.

### THIRD CLAIM FOR RELIEF
**Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 504**
**Plaintiff HH vs. CCSD**

70. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs as if they were fully set forth herein.

71. Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving Federal financial assistance.

72. Plaintiffs are informed and believe and thereon allege that CCSD is and has been at all relevant times the recipient of federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific public facilities described herein and the activities that take place therein.

73. By subjecting the minor plaintiff to ongoing physical and verbal abuse, HH was

COMPLAINT

unable to enjoy the benefits of education. In addition, non-disabled children were not subjected to similar acts of abuse.

74. By its actions or inactions in denying equal access to educational services and by subjecting HH to a hostile educational environment, CCSD has violated the rights of HH under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

75. GLASS was deliberately indifferent to the risk that her actions would deprive the minor plaintiffs of equal and meaningful access to education.

76. CCSD is vicariously liable for the actions or inactions of its employees. CONNORS and other District employees were deliberately indifferent to the abuse committed by GLASS. They had actual knowledge of the ongoing abuse and knew that GLASS was likely to continue abusing HH but failed to act upon that knowledge.

77. This deliberate indifference by employees of CCSD gives rise to respondeat superior liability of CCSD.

78. As a proximate result of CCSD's failure to comply with their duty under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the regulations promulgated thereunder, HH has suffered damages as described herein.

**FOURTH CLAIM FOR RELIEF**
**Battery**
**Plaintiff HH vs. Defendant GLASS and CCSD**

79. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

80. The use of force employed by GLASS against the minor Plaintiff as alleged herein was unnecessary to carry out any reasonable purpose and/or exceeded the force reasonably necessary under the circumstances.

81. The use of force, as alleged herein, by GLASS against minor Plaintiff HH constituted a battery.

82. The actions of GLASS as alleged herein all occurred in or around the classroom and

COMPLAINT

on the campus of KAES, to which GLASS was assigned by CCSD to work, and during regular workday hours.

83. The actions of GLASS as alleged herein were committed in the course and scope of the tasks assigned to her by CCSD.

84. All of the actions of GLASS as alleged herein were reasonably foreseeable to CCSD considering the nature and scope of her employment with CCSD, in that it was foreseeable that in the course and scope of carrying out her duties GLASS would have to exercise control over the minor Plaintiff and other students in the class.

85. The actions of GLASS as alleged herein were also reasonably foreseeable to CCSD because GLASS was permitted to continue in her duties after her propensity for committing such acts of battery became known to her supervisors at CCSD.

86. CCSD is vicariously liable for GLASS's acts of battery pursuant to Nev. Rev. Stat. §41.745(1).

87. As a proximate result of GLASS's battery, HH suffered damages as alleged herein.

**FIFTH CLAIM FOR RELIEF**
**Criminal Violations Motivated by Characteristics of Victim, NRS § 41.690**
**Plaintiff HH vs. Defendant GLASS**

88. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

89. The use of force, as alleged herein, by GLASS against HH constituted willful violations of NRS §§ 200.400, 200.481 and 200.508.

90. On information and belief, GLASS's willful violations of these provisions as they relate to Plaintiff HH were motivated by the actual or perceived disabilities of said Plaintiff.

91. As a proximate result, HH suffered damages as alleged herein.

92. Additionally, based on GLASS's violations of NRS § 41.690, Plaintiffs are entitled to costs, attorneys' fees, and punitive damages.

/ / /

/ / /

COMPLAINT

**SIXTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**Plaintiffs HH and TAMMARA TIMS  vs. Defendants GLASS, CONNORS and CCSD**

93.     Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

94.     On information and belief, in subjecting HH to abuse as alleged herein, GLASS engaged in extreme and outrageous conduct beyond the bounds tolerated in a decent society.  In particular, GLASS was an adult and the teacher of HH who was a young child with disabilities. As a result, GLASS was in a position of authority.  HH was particularly vulnerable because of his age and disabilities, including being functionally nonverbal.  GLASS knew that HH was particularly vulnerable and knew that his abuse of HH would likely result in harm to him due to mental distress.

95.     On information and belief, in committing the violent acts alleged herein GLASS acted with the intent to cause HH extreme emotional distress, or at a minimum, acted with a reckless disregard as to whether such actions would cause such extreme emotional distress.

96.     On information and belief, CONNORS and other District employees had actual knowledge of the violent acts committed against HH by GLASS, yet failed to take steps to stop or prevent further acts of violence. Such conduct is outrageous.  On information and belief, CONNORS and other District employees took advantage of HH's disabilities by attempting to cover up the abuse, knowing full well that HH could not verbally report the abuse because of his disabilities.  Defendants' conduct in this regard was outrageous and Defendants' acted either with the intent to inflict emotional distress or at a minimum, acted with a reckless disregard as to whether such actions would cause such extreme emotional distress.

97.     CONNORS and other District employees had a duty to promptly inform TIMS after learning about the abuse, but did not do so, and instead they actively misled the TIMS as to the severity and frequency of the abuse by GLASS, as to GLASS's competency and as to HH's experiences with GLASS inside the classroom.  It was foreseeable that withholding this information from TIMS would cause more emotional distress than informing them in the first

place.

98. CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employments. See NRS 41.031, NRS 41.038.

99. As a proximate result of each Defendants' intentional acts, Plaintiffs have incurred damages as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### Negligence
### Plaintiffs HH and TIMS vs. Defendants GLASS, CONNORS and CCSD

100. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

101. Defendants and each of them owed a duty to exercise reasonable care in their interactions with each plaintiff.

102. A special relationship existed between each of Defendants and Plaintiff, which arose from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel. CCSD owed a duty to exercise reasonable care to prevent harm to HH at the hands of anyone, including GLASS, negligently or intentionally.

103. Furthermore, on information and belief, upon learning that GLASS had been suspected of abusing students, the duty to exercise reasonable care to prevent further harm to HH included a duty to disclose the suspected abuse to the parents of HH.

104. Teachers, instructional aides, and administrative officers of the CCSD are mandatory reporters as defined by NRS § 432B.220. As such, they were under a mandatory duty to report to a law enforcement agency or to an agency which provides child welfare services whenever any of them, in his or her professional or occupational capacity, knew or had reasonable cause to believe that had a child had been the victim of child abuse or neglect. A mandatory reporter is required to report suspected child abuse as soon as reasonably practicable, but not later than 24 hours after the person knows or has reasonable cause to believe that the child has been abused or neglected.

105. CONNORS and other District employees, were each at all times relevant to the

COMPLAINT

allegations herein, a mandatory reporter as defined by NRS § 432B.220.

106. On information and belief, CONNORS, other District employees including teachers, instructional aides, and/or administrative officers of CCSD were each aware that children under the supervision of GLASS were victims of abuse as defined by NRS § 432B.070 and/or NRS § 432B.090 and that the abuse was ongoing; however, none of these mandatory reporters employed by the CCSD complied with their duty to report the abuse to an agency specified in NRS § 432B.220(1)(a).

107. Defendants and each of them breached their duty to exercise reasonable care when interacting with Plaintiff HH by physically and emotionally abusing said Plaintiff and/or by failing to prevent harms to said Plaintiffs and/or by failing to train CCSD staff that they are mandatory reporters under state law; that what GLASS was doing to minor plaintiffs was child abuse; and/or that they were supposed to report suspected child abuse immediately to the police as required by Nevada law; and/or by failing to inform TIMS of the suspected child abuse when Defendants learned of the suspected abuse.

108. Defendants and each of them breached their duty to exercise reasonable care when interacting with Plaintiff HH by physically and emotionally abusing said Plaintiff and/or by failing to prevent the use of a prohibited "Aversive Intervention" as defined in NRS 388.473, including but not limited to the deprivation of necessities needed to sustain the health of HH including, without limitation, the denial and unreasonable delay in the provision of (a) food or liquid at a time when it is customarily served.  NRS 388.497 specifically prohibits the use of such "aversive intervention" from being used on pupil with a disability such as HH.  Defendant GLASS's repeated denial of food and liquid to HH was known or should have been known to CONNORS and other district employees.

109. CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employment. See NRS §§ 41.031, 41.038.

110. As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged herein.

COMPLAINT

## EIGHTH CAUSE OF ACTION
**Negligent Supervision**
**Plaintiffs HH and TIMS vs. Defendants CONNORS and CCSD**

111. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

112. As school personnel, CONNORS and/or other CCSD supervisory employees owed students under their supervision, including HH, a protective duty of care, which includes overseeing the educational environment and the performance of GLASS and taking reasonable measures to guard HH against abuse from foreseeable sources, including GLASS.

113. On information and belief, GLASS was unfit to perform the work for which she was hired to do.

114. On information and belief, CONNORS and/or other CCSD supervisory employees knew or should have known that GLASS was abusing students at school either by personally observing the abuse or by the reports received from other school employees.

115. GLASS's abuse of HH harmed him.

116. CONNORS and/or other CCSD supervisory employees' negligence in hiring, supervising and retaining GLASS was a substantial factor in causing harm to HH.

117. CCSD is liable for injuries proximately caused by the acts or omissions of its employees acting within the scope of their employments. See NRS 41.031, NRS 41.038.

118. As a proximate result of Defendants' negligent supervision of GLASS, Plaintiffs have incurred damages as alleged herein.

## NINTH CAUSE OF ACTION
**Enhanced Damages for Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395**
**Plaintiffs HH vs. Defendant GLASS**

119. Plaintiffs incorporate and reallege by reference all the foregoing paragraphs, as if they were fully set forth herein.

120. At all times relevant to this action, HH was a vulnerable person as that term is defined by NRS § 41.1395.

121. In committing the violent acts alleged herein, GLASS acted with recklessness,

oppression, fraud and/or malice as that term is defined by NRS § 41.1395.

122. Accordingly, Plaintiff HH is entitled to double damages and attorneys' fees and costs against GLASS under NRS § 41.1395.

## JURY DEMAND

Plaintiffs hereby demand that this matter be tried by a jury.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Compensatory damages to Plaintiffs for pain, suffering, injury, emotional distress and for medical expenses, past and future;

2. Punitive damages against Defendants GLASS and CONNORS as authorized under NRS § 41.690;

3. Double Damages against Defendant GLASS under NRS § 41.1395;

4. Attorneys' fees and costs as authorized under U.S.C. § 1983, U.S.C. § 12101, U.S.C. § 504, and NRS §§ 41.690, 41.1395;

5. Prejudgment interest and post judgment interest as allowed by law; and

6. Such other and further relief as the court deems just and proper.

DATED:  This 5th day of January, 2018.

**ROBISON, SIMONS, SHARP & BRUST**
71 Washington Street
Reno, NV 89503

/s/ Michael A. Burke, Esq.
*Attorneys for Plaintiffs*

*To be admitted pro hac vice:*

PETER W. ALFERT, SBN 83139
IAN HANSEN, SBN 255449
LAW OFFICE OF PETER ALFERT
200 Pringle Ave., Suite 450
Walnut Creek, California 94596

TODD BOLEY, SBN 64119
2381 Mariner Square Drive, Suite 280
Alameda, California 94501