# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Tammara Tims, et al., | Case No.: 2:18-cv-00021-JAD-VCF |
| Plaintiffs | **Order Granting Motion to Dismiss in Part and with Leave to Amend** |
| v. | [ECF No. 22] |
| Clark County School District, et al., | |
| Defendants | |

Special-education student H.H. and his mother sue H.H.'s former teacher, principal, and the Clark County School District (CCSD), alleging that H.H. was openly abused by the teacher and that the principal and CCSD did nothing to stop it and concealed it from the mother. The principal moves to dismiss claims against his as duplicative official-capacity claims, and based on qualified and discretionary-act immunity. And both CCSD and the principal move to dismiss the mother's tort claims because she is not a direct victim of the abuse.[1] Connors is sued in his individual capacity, and the facts alleged preclude him from claiming immunity, but the mother's claims, as pled, fail to state viable tort claims under Nevada law. So I grant the motion in part with leave to amend.

## Background[2]

Plaintiff H.H. is a minor child diagnosed with Autism Spectrum Disorder. As part of his symptoms, H.H. has trouble communicating verbally. In August 2016, H.H. was assigned to defendant Kasey Glass's special-education class. H.H. alleges that he was subjected to a variety of physical and verbal abuses while he was Glass's student. On one incident on March 15, 2017,

---

[1] ECF. No. 22.

[2] These facts come from the complaint's factual allegations, which I accept as true at this motion-to-dismiss stage.

in the school cafeteria, Glass "grabbed, pulled, and pushed H.H.," kicked him in the head, took his food away from before he was able to eat it, and pinned him in his chair by pushing a table at which he was seated up against his body.  When H.H. indicated that he wanted his food, Glass "intentionally triggered" H.H.'s behaviors by taunting and humiliating him.  This incident took place in front of teachers, students, and CCSD personnel and was recorded on CCSD's closed-circuit cameras.  After the incident, a Clark County School District Police Department (CCSDPD) officer reported that there was probable cause to charge Glass with battery and child neglect.[3]

H.H. alleges that Glass's behavior toward him and other students was open and obvious and that at least one of Glass's colleagues at Kirk Adams Elementary School reported her to the CCSDPD.  Since leaving Glass's classroom, H.H. has continued to experience extreme anxiety and stress, requiring psychological treatment.  His mother, Tammara Tims, was devastated to find out about her son's abuse and that the school's principal, defendant Mark Connors, did not report any of the incidents to her.

Tims and H.H.[4] filed this lawsuit in January 2018, asserting various federal- and state-law claims against Glass, Connors, and the CCSD.  H.H. sues all three defendants under § 1983 for constitutional-rights violations; the CCSD and Glass for battery; CCSD for discrimination under the Americans with Disabilities Act and violating the Rehabilitation Act; and Glass for a violation of NRS 41.690.  Together, Tims and H.H. sue the CCSD for negligent supervision, and

---

[3] The report confirms that "an affidavit for warrant was issued for Glass" for the charges described, but does not indicate that charges have been filed or whether Glass has been arrested. ECF No. 1 at ¶ 35.

[4] H.H.'s claims are brought by his guardian ad litem on his behalf.

2

all defendants for intentional infliction of emotional distress (IIED) and negligence.[5] Connors moves to dismiss all claims against him as duplicative of the claims against CCSD because, he believes, he is being sued only in his official capacity. He also moves to dismiss H.H.'s § 1983 claim based on qualified immunity and all state-law claims based on discretionary-act immunity. And both Connors and CCSD move to dismiss Tims's claims for failing to state a viable tort claim under Nevada law.[6]

## Discussion

### A. Motion-to-dismiss standard

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[7] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[8] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[9] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[10]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual

---

[5] ECF No. 1.
[6] ECF No. 22.
[7] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[8] *Twombly*, 550 U.S. at 570.
[9] *Iqbal*, 556 U.S. at 678.
[10] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

3

allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[11] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[12] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[13] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[14] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[15]

**B.     Plaintiffs' claims against Connors are not subject to dismissal as redundant.**

Connors first argues that the claims against him should be dismissed as redundant. Connors theorizes that, because the complaint does not specify the capacity in which he is being sued and alleges that he was acting in the course and scope of his employment, he is being sued in his official capacity, which is the same as suing the school district itself. And because the school district is already named in this case, the claims against him are therefore redundant. But courts in this circuit presume that an official is being sued in his individual capacity when the complaint names the official and seeks damages under § 1983.[16] When a complaint alleges acts

---

[11] *Iqbal*, 556 U.S. at 678–79.
[12] *Id.*
[13] *Id.* at 679.
[14] *Id.*
[15] *Twombly*, 550 U.S. at 570.
[16] *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1284 (9th Cir. 1994) (noting that "[a]ny other construction would be illogical where the complaint is silent as to capacity, since a claim for damages against state officials in their official capacities is plainly barred").

4

by the defendant under color of state law that deprived the plaintiff of federal rights and caused the plaintiff damage, then the plaintiff has established a claim for damages under § 1983.[17]

Here, the complaint is silent about what capacity Connors is being sued in, but clearly states a claim for damages under § 1983 against him individually. The complaint alleges that Connors acted under color of state law[18] and that his actions deprived H.H. of federal rights[19] and damaged H.H.[20] The presumption thus applies, and the claims against Connors aren't subject to dismissal as redundant.

**C.     Connors does not enjoy qualified immunity from H.H.'s § 1983 claim.**

Connors next argues that he is entitled to qualified immunity for H.H.'s § 1983 claim. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[21] "Public officials are immune from suit . . . unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"[22] "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[23] It is not necessary for a plaintiff to cite a case that is "directly on point, [but] existing

---

[17] *Id.*

[18] ECF No. 1 at ¶ 6.

[19] *Id.* at ¶ 53–55.

[20] *Id.* at ¶ 59.

[21] *Mullenix v. Luna*, ___ U.S. ___, ___, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[22] *City & Cty. of San Francisco, Calif. v. Sheehan*, ___ U.S. ___, ___, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, ___ U.S. ____, ____,134 S. Ct. 2012, 2023 (2014)).

[23] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)) (emphasis in *Hamby*).

5

precedent must have placed the . . . constitutional question beyond debate."[24]  As the Ninth Circuit recently explained in *Hamby v. Hammond*, a defendant is entitled to qualified immunity if "none of our precedents 'squarely governs' the facts here," meaning that "we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials] did."[25]  The plaintiff bears the burden of demonstrating that the "right allegedly violated was clearly established at the time of the alleged misconduct."[26]

There is no respondeat superior liability under § 1983.[27]  A supervisor may be liable for his subordinates' constitutional violations only if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.[28]  A court will impose liability for the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."[29]

The parties do not disagree about whether a § 1983 action could, theoretically, be brought against Connors.  Connors argues instead that the plaintiffs have failed to plead individual action on his part that would give rise to a claim of deliberate indifference, which is the only way to find Connors liable under § 1983.  Connors argues that H.H.'s complaint is "devoid of specifics"

---

[24] *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)).
[25] *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[26] *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).
[27] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
[28] *Preschooler II v. Clark Cty. School Bd. of Tr.*, 479 F.3d 1175, 1182 (9th Cir. 2007).
[29] *Star v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011).

to support a deliberate-indifference claim,[30] meaning that H.H.'s § 1983 claim against Connors must be premised entirely on respondeat superior liability, which is not a clearly established right.  Connors argues that he is entitled to qualified immunity on this basis: without sufficient allegations to support a claim that he personally committed a constitutional violation, he is immune from suit for Glass's actions.

      To successfully claim qualified immunity, Connors must show that a reasonable official in his position at the time would not have known that his actions could have violated an established legal right.  At this stage, based on the pleadings and taking all well-pleaded facts as true, H.H. has sufficiently pleaded a deliberate-indifference claim against Connors.  H.H. alleges that Glass's actions were "open and obvious"[31] and that at least one teacher reported Glass to CCSDPD.[32]  The complaint also details one confrontation between Glass and H.H. that occurred in the school cafeteria and led a CCSDPD Officer to find probable cause to charge Glass with battery and child neglect.[33]  These allegations reasonably lead to the inference that Connors, as principal, knew or should have known of Glass's abuses and taken appropriate actions to stop them.  A failure to act in light of this knowledge, as H.H. alleges in his complaint,[34] could give rise to liability for deliberate indifference.  A reasonable principal would be on notice of that fact in light of established law.[35]  Thus, the doctrine of qualified immunity cannot shield Connors from H.H.'s § 1983 claim as pled.

---

[30] ECF No. 22 at 7.
[31] ECF No. 1 at ¶ 23.
[32] *Id.* at ¶ 14.
[33] *Id.* at ¶¶ 33–35.
[34] *Id.* at ¶ 21, 25–26, 53–54, 103–06, 114.
[35] *See Preschooler II*, 479 F.3d at 1182.

**D.      Discretionary-function immunity also fails to protect Connors from this lawsuit.**

Connors next contends that he is entitled to discretionary-function immunity on plaintiffs' state-law claims. NRS § 41.032(2) is a claim bar that provides that no action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved is abused."[36] The Nevada Supreme Court has adopted the Supreme Court's *Berkovitz-Gaubert*[37] test to determine whether a state official's actions are shielded from suit by discretionary immunity.[38] To qualify, a state official's action must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy.[39] "[I]f the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion."[40] Courts need not determine that a state actor "made a conscious decision regarding policy considerations."[41] The inquiry instead focuses "on the nature of the actions taken and on

---

[36] Nev. Rev. Stat. § 41.032(2).

[37] *See Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991).

[38] *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007); Nev. Rev. Stat. § 41.032(2).

[39] *Martinez*, 168 P.3d at 729.

[40] *Id.* (internal citations and quotations omitted).

[41] *Id.* at 728.

whether they are susceptible to policy analysis."[42]  Nevada looks to federal law interpreting the Federal Tort Claims Act for guidance on what type of conduct discretionary immunity protects.[43]

Discretionary-function immunity is not available for intentional torts and bad-faith conduct,[44] so the plaintiffs' claim for IIED cannot be dismissed on this basis.  Plaintiffs' remaining state-law claims against Connors are negligence-based. They theorize that Connors was negligent in (1) failing to report Glass's abuse despite being a mandatory reporter under state law; and (2) hiring, supervising, and retaining Glass, despite knowing of her abusive behavior.  Connors argues that this conduct was all discretionary decisions so he is shielded from suit under NRS 41.032(2).

Plaintiffs cite *Hurd v. Clark Cty. School Dist.*, a case with similar facts in which the Chief Judge in this district held that negligence claims based on the same facts as an IIED claim prevented the negligence claims from falling under discretionary-function immunity because they were related to intentional bad-faith conduct.[45]  They argue that I should apply the same standard here because their negligence claims are premised on a theory similar to their IIED claim: Connors knew or should have known about Glass's allegedly abusive behavior and concealed the abuse by failing to discipline Glass or report the abuse to H.H.'s file, the Board of Trustees, or H.H.'s parents.

---

[42] *Id.*

[43] *Id.*

[44] *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014) (holding that intentional torts are exempt from statutory discretionary-function immunity), *vacated on other grounds*, 136 S. Ct. 1277 (2016).

[45] *Hurd v. Clark Cty. School Dist.*, 2:16-cv-02011-GMN-NJK, 2017 WL 4349231, at * 7 (D. Nev. Sept. 29, 2017).

Nevada law prohibits the use of "aversive interventions" (corporal punishment or verbal and mental abuse used to punish or discourage students' behavior)[46] on any student, particularly students with disabilities.[47] A school employee who intentionally uses an aversive intervention on a student with a disability is subject to disciplinary action.[48] The incident must then be reported to the school district's board of trustees, who must then work with the school to develop a corrective plan to prevent further violations.[49] The incident must also be documented in the student's record, and a report sent to the student's Individualized Education Program team, the student's parent or guardian, and the Board of School Trustees.[50]

Taking the allegations in the complaint as true, I find that Connors's alleged conduct is not shielded by discretionary-function immunity for the same reason the IIED claim is not shielded: H.H. has alleged bad-faith conduct not susceptible to policy analysis, and it is not shielded by discretionary-function immunity. So, the motion to dismiss plaintiffs' negligence and negligent supervision claims against Connors on this basis is denied.

**E.   Timms has failed to state an IIED claim.**

In Nevada, a third-party bystander may recover on an IIED claim if the bystander has a "sufficiently close relationship with the victim and witnessed the incident."[51] Tims does not

---

[46] Nev. Rev. Stat. § 388.473.
[47] Nev. Rev. Stat. § 388.497.
[48] Nev. Rev. Stat. § 388. 506.
[49] Nev. Rev. Stat. § 388.506.
[50] Nev. Rev. Stat. § 388.501.
[51] *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981); *see also Cardinale v. La Petite Acad., Inc.*, 207 F. Supp. 2d 1158, 1161 (D. Nev. 2002) (holding that parents could not recover under IIED for alleged abuse of their children at preschool absent allegations that they witnessed the abuse).

allege that she personally witnessed any of the alleged abuse. So, if her claim is based on Glass's conduct, it fails as a matter of Nevada law.

Tims argues instead that her claim is premised instead on the defendants' concealment of "the ongoing abuse that her son was undergoing."[52] Tims again references *Hurd*, noting that the principal in that case similarly withheld information about abuse from students' parents, and Chief Judge Navarro found that "knowingly withholding information and allowing a potentially abusive teacher to continue interacting with the students plausibly gives rise to an IIED claim."[53] Tims also notes that *Hurd* is consistent with a California case, *Smith v. Tobinworld*, in which a principal failed to inform a mother that her son was being restrained and physically mistreated at school.[54]

But Tims's allegations fall short of showing that Connors actually knew about and concealed the abuse—at best, they merely allow for the inference that Connors knew about Glass's behavior. The complaints in *Hurd* and *Tobinworld* contained specific allegations of principals coaching teachers to engage in abusive behavior (and then lie about it on incident reports),[55] or actively concealing abuses even when they knew the teacher at issue was investigated and charged with child abuse and neglect.[56] Tims concludes that allegations "similar" to hers were sufficient in *Hurd* to survive a motion to dismiss, but she doesn't compare the allegations in the *Hurd* complaint with her own. At most, Tims alleges that Connors *should have known* of Glass's abuses. To state a claim for IIED, Tims must allege facts that show that

---

[52] ECF No. 25 at 10.
[53] *Hurd*, at *6.
[54] *Smith v. Tobinworld*, 2016 WL 3519244 (N.D. Cal. June 28, 2016).
[55] *Tobinworld*, at *2.
[56] *Hurd*, at *1–2.

11

Connors or CCSD actually knew about Glass's behavior and actively concealed it, not merely that they should have known about the abuse. I therefore dismiss Tims's claim against Connors and CCSD for IIED without prejudice and with leave to amend if she can plead true facts to satisfy the *Iqbal-Twombly* plausibility standard for this claim.

### F. Tims has failed to state a claim for negligence or negligent supervision.

Tims's final claims are captioned as negligence and negligent supervision claims in which she alleges that the defendants' actions caused her emotional distress. But, like with her IIED claim, Tims does not allege a bystander theory of negligence. Instead, she asserts that she was a "direct victim of Defendants' failure to notify her of her son's ongoing abuse." This is more properly characterized as a claim for negligent infliction of emotional distress.[57]

Under Nevada law, negligent infliction of emotional distress is cognizable only as a "bystander" claim.[58] If a plaintiff is a direct victim of negligence, she can only recover emotional damages "as part of the damages suffered."[59] And when a plaintiff is claiming emotional-distress damages for a negligence claim, the emotional distress either (1) must be secondary to physical injury, or (2) must precipitate physical symptoms.[60] Because Tims has pleaded emotional damages as a direct victim of negligence and not a mere bystander, she must also allege a physical injury or physical manifestation of her emotional distress. Tims has not done this, so she has failed to state negligence and negligent supervision claims cognizable under

---

[57] ECF No. 25 at 11.

[58] *Grotts v. Zahner*, 989 P.2d 415, 415 (Nev. 1999).

[59] *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995); *Kennedy*, 727 F. Supp. 2d at 934; *Villagomes v. Laboratory Corp. of Am.*, 783 F.Supp.2d 1121, 1126 (D. Nev. 2011).

[60] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

Nevada law. I therefore dismiss these claims without prejudice and give Tims leave to amend them if she can plead true facts to cure this deficiency.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Connors's and the CCSD's motion to dismiss **[ECF No. 22] is GRANTED in part.** Tims's claims for IIED, negligence, and negligent supervision are dismissed without prejudice and with leave to amend within 10 days if she can cure the defects identified in this order. The motion is **DENIED** in all other respects.

Dated: August 28, 2018

_____
U.S. District Judge Jennifer A. Dorsey